```
              UNITED STATES DISTRICT COURT
                       FOR THE
                  DISTRICT OF VERMONT

YISROEL TEITLEBAUM,              :
                                 :
          Plaintiff,             :
                                 :
v.                               :    Case No. 2:23-cv-88
                                 :
RYAN P. O'NEIL, JENNIFER NILSEN, :
ERIC POTTER, DAVID BOLIVER,      :
TOWN OF WILMINGTON SELECTBOARD   :
and TOWN OF WILMINGTON,          :
FOODS BAKERIES DISTRIBUTION LLC, :
                                 :
          Defendants.            :
```

## OPINION AND ORDER

Plaintiff Yisroel Teitlebaum purchased a property in
Wilmington, Vermont in June of 2021 ("the Property"). Since that
time, he and his family have hosted large groups of people and
practiced Judaism on the Property. Teitlebaum has filed this
lawsuit against his neighbors, Jennifer Nilsen, Eric Potter, and
David Boliver, as well as the Town of Wilmington, the Town of
Wilmington Selectboard, and police officer Ryan P. O'Neil,
alleging a pattern of intrusive and anti-Semitic acts. Nilsen
and Potter have filed motions to dismiss. Taking all of the
facts in the Complaint as true, the Court concludes that
Nilsen's and Potter's actions are insufficient to support
Teitlebaum's causes of action for nuisance and intrusion upon
seclusion.

## I.    Factual and Procedural Background

Teitlebaum filed this lawsuit against three of his Vermont neighbors, two Town of Wilmington entities, and a Wilmington police officer. Two of the neighbors filed motions to dismiss. ECF No. 38 (Nilsen motion to dismiss); ECF No. 46-1 (Potter motion to dismiss). The Amended Complaint makes clear that Teitlebaum only seeks to bring claims for intrusion upon seclusion and nuisance (Counts VII and VIII) against Defendants Nilsen and Potter; the remaining counts are specific to other named defendants.[1]

Teitlebaum and his family are observant and practicing Jews with many relatives. ECF No. 33 at 5. They live in Connecticut, and while it is not immediately clear from the Amended Complaint, seem to use the Property as a vacation home.

According to the Amended Complaint, the Property was built in the 1960s by Alf Nilsen (Defendant Jennifer Nilsen's father-in-law). ECF No. 33 at 3. It was used as an inn and for large group housing by Alf Nilsen and several other owners until Teitlebaum purchased the Property on June 9, 2021. ECF No. 33 at

---

[1] Nilsen's motion argues that Teitlebaum cannot state a claim against her for malicious prosecution because she did not make the initial complaint that gave rise to the prosecution, and subsequently only served as a witness in the investigation. ECF No. 38 at 4. The only defendant accused of malicious prosecution is Officer O'Neil. ECF No. 33 at 29. His interactions with Nilsen simply provide factual context for that Count.

4. Defendants Nilsen and Potter own adjacent properties.
Teitlebaum states that Nilsen and Potter engaged in a series of
harassing and interfering actions, including complaining to the
Town about large groups of people on the Property (which they
allegedly never did before Teitlebaum's purchase). ECF No. 33 at
4. He asserts that Nilsen, Potter, and Boliver have filed "more
than fourteen complaints" since he occupied the Property.[2]
Teitlebaum notes that several of the complaints referenced his
religion, and states that they constituted "baseless harassment
designed to interfere with Mr. Teitlebaum's privacy and Mr.
Teitlebaum's use of his Property." ECF No. 33 at 13.

In addition to the law enforcement complaints, Teitlebaum
alleges that Nilsen and Potter committed several acts that
contribute to his nuisance and intrusion upon seclusion claims.
This includes his assertion that on multiple occasions Nilsen
and Potter made audio and video recordings of his activities on
the Property. ECF No. 33 at 13. Additional allegations are
detailed below.

Nilsen and Potter filed motions to dismiss the Amended
Complaint for failure to state a claim. Teitlebaum responded to
both, and neither defendant filed a reply brief. None of the

---

[2] This includes complaints filed by Defendant Boliver, who has
not filed a motion to dismiss.

other defendants moved to dismiss. Both Nilsen's and Potter's motions are ripe for the Court.

**A. Nilsen**

Nilsen filed complaints with the Town Zoning Authority ("TZA") on May 7 and 13, 2022, and with the Town Manager on May 16. ECF No. 33 at 9.[3] The last of these involved a complaint about "the noise from 50+ people" staying at the Property, including children "screaming and yelling" while playing. ECF No. 33 at 10. None of these complaints led to any Town law enforcement action. Nilsen made another complaint on June 2, 2022, which "intimated" that the Town should take action against Teitlebaum (although it did not do so). ECF No. 33 at 11-12. Notably, these complaints were filed nearly a year after Teitlebaum purchased the Property.

Teitlebaum also alleges that Nilsen was hostile towards his guests on several occasions. Specifically, he states that on September 24, 2022, two guests wearing traditional Jewish attire went for a walk on a public road when they encountered Nilsen and another woman walking large dogs. The dogs allegedly barked and came close to the guests, who requested that Nilsen leash the dogs. Nilsen then responded "well maybe you shouldn't be on this road." ECF No. 33 at 15. On a separate occasion, Nilsen

---

[3] The Amended Complaint does not state what motivated the May 7, or May 13 complaints.

allegedly interacted with Teitlebaum's guests and told them to "go back where you came from." ECF No. 33 at 15.

**B. Potter**

Teitlebaum alleges that on June 20, 2021 – just eleven days after he purchased the Property – Potter and Boliver filed complaints with the Wilmington Police regarding a Jewish ritual that involved Teitlebaum bathing naked. ECF No. 33 at 6. Boliver's complaint allegedly used the phrase "members of the Jewish community." ECF No. 33 at 6. Potter and Boliver's complaint caused the Wilmington Police to visit Teitlebaum's Property, but that visit did not lead to any citation or charge. ECF No. 33 at 7.

Potter complained to the Town Manager two days later (June 22, 2021) and again the following day (June 23, 2021). ECF No. 33 at 7. These complaints made explicit reference to Teitlebaum's religion, calling Teitlebaum "[Hasidic] Jewish" and explaining that a "[Hasidic] Jewish camp" was operating on the Property. ECF No. 33 at 8. This caused the Town of Wilmington to send Teitlebaum a notice of "zoning compliance concern" on June 25, 2021, expressing apprehension that "up to 60 youth campers" would be on the Property over the summer. ECF No. 33 at 8. According to the Amended Complaint, authorities sent this notice to the wrong address. Nonetheless, on July 1, Vermont Department of Health Public Inspection Manager Andrew Chevrefils allegedly

told Teitlebaum that "as currently operated," he would "not need a license" to operate a lodging establishment or children's camp on the Property. ECF No. 33 at 8.

The TZA tried to serve Teitlebaum with another notice of alleged violation on August 31, but again delivered it to the wrong address. The TZA later contacted Teitlebaum's attorney regarding the alleged zoning violations, at which point Teitlebaum "promptly complied with the Town directive to file an application with the Development Review Board." ECF No. 33 at 9.

Potter allegedly filed additional complaints with the Town Manager on March 9, 2022 and with the TZA on May 16, 2022. The Amended Complaint does not state what motivated these complaints. Neither led to any Town enforcement action or contact with law enforcement, but Potter's May 16 complaint explained his belief that the Town should "police the situation over at" Teitlebaum's Property. ECF No. 33 at 11.

On May 26, 2022, Potter complained to the Wilmington Police about "a large gathering" on Teitlebaum's Property that Potter found too noisy. ECF No. 33 at 11. This led to a visit from the police, but no citation or charge. Potter allegedly complained again the following day, which did not lead to any enforcement action.

On June 12, 2022, Potter and Boliver filed another complaint. According to a police summary of the complaint, "Eric

6

Potter reported the Hasidic Jews are bathing naked in the river again. He is uncomfortable with it because he doesn't want his daughter to see." ECF No. 33 at 12. This allegedly prompted Wilmington law enforcement to contact Teitlebaum, but again did not result in a citation or charge. Finally, on September 24, Potter complained to the police that Teitlebaum was committing a "light ordinance" violation on his Property, which did not result in any law enforcement action.

Teitlebaum also claims that during a conversation with Potter attempting to resolve their differences, Potter "demanded that Mr. Teitlebaum agree to a self-imposed ordinance of no noise whatsoever after 4:00 p.m." ECF No. 33 at 12. Potter also allegedly told Teitlebaum that he did not respect Teitlebaum moving into Wilmington without attempting to be like the locals, and said that he would "blast" music by the artist Limp Bizkit so that people on Teitlebaum's Property would hear "a whole lot of f-bombs." ECF No. 33 at 12.

Finally, Teitlebaum states that on September 3, 2022, Potter and Boliver filed a noise complaint that led to an anti-Semitic reaction by Wilmington Police Officer O'Neil. ECF No. 33 at 16. After responding to Teitlebaum's house, O'Neil allegedly encountered Nilsen on the public road and interviewed her about the noise. Nilsen made a written statement and expressed satisfaction that Teitlebaum would face "adverse consequences."

7

ECF No. 33 at 21. Potter and several other individuals also provided written statements about the noise complaint. ECF No. 33 at 21.

## II. Discussion

### A. Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss filed under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, a court need not accept as true "[l]egal conclusions, deductions or opinions couched as factual

allegations." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## B. Standing

Nilsen first argues that Teitlebaum lacks standing to bring a claim for harm to his guests. ECF No. 38 at 4. This misses the mark. The Amended Complaint submits that Nilsen's alleged harassment of Teitlebaum's guests harmed his ability to host religious and family gatherings on his Property. *See* ECF No. 33 at 15 (stating that the incidents occurred while "a group of Mr. Teitlebaum's family and friends was staying at the Property"). Impediment of Teitlebaum's ability to use the Property to host community gatherings without disruption clearly constitutes an "injury in fact that is concrete, particularized, and actual." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *United States v. Causby*, 328 U.S. 256 (1946) (interference with property enjoyment via use of airspace was actionable).

Further, the Supreme Court explained in *TransUnion* that intangible harms including "reputational harms, disclosure of private information, and intrusion upon seclusion" can constitute "concrete harm" for the purposes of Article III. *Id.* at 425. Teitlebaum has plausibly alleged harm analogous to reputational harm and intrusion upon seclusion, conferring standing to challenge Nilsen's conduct.

Nilsen also argues that Teitlebaum has not specified any concrete harm resulting from her actions. Again, the Amended Complaint plausibly states that Teitlebaum's use of his Property was altered by Defendants' conduct. It alleges that he received unwarranted law enforcement visits due to unsubstantiated complaints and suffered verbal harassment. While it does not state precisely how Teitlebaum's behavior changed in response to these actions, these allegedly harmful actions are "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

**C. Intrusion Upon Seclusion**

To bring a claim for the tort of intrusion upon seclusion, a plaintiff must show an "intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable person." *Weinstein v. Leonard*, 2015 VT 136, ¶ 29 (cleaned up) (quoting *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 162 (1992)). The Vermont Supreme Court has explained that the intrusion "must be substantial." *Hodgdon*, 160 Vt. at 162.

Teitlebaum has not alleged that Nilsen, Potter, and Boliver were acting in concert. The claim for intrusion upon seclusion would be stronger if the neighbor-defendant's claims were considered together but the Amended Complaint simply states that

Nilsen, Potter, and Boliver "repeatedly interfered with Mr. Teitlebaum's privacy and Mr. Teitlebaum's use of the Property," not that the three coordinated their actions. Notably, Nilsen's first law enforcement complaints were filed nearly a year after Teitlebaum purchased the Property and Potter made his first complaints. It is not a plausible inference from the Amended Complaint that the three neighbors coordinated a "harassing" campaign against Teitlebaum. Each defendant's actions will be evaluated independently.

Teitlebaum alleges that Nilsen and Potter intruded upon his seclusion through a series of actions: (1) filing repeated complaints about Teitlebaum's use of his Property, especially related to his practice of Judaism, that did not result in any sanction; (2) making video and audio recordings of activities taking place on the Property; (3) and speaking to Teitlebaum and his guests in a "derisive manner." ECF No. 33 at 30. Teitlebaum has not alleged a substantial interference with his interest in solitude or seclusion.

Several comparable Vermont Supreme Court cases provide guidance. The first is *Weinstein v. Leonard*, 2015 VT 136. In that case, the Leonards sought a permit to build a barn on a lot adjacent to Weinstein's property. Weinstein later "hollered obscenities and bizarre comments" at the Leonards from her upstairs window and "physically confronted" them with a "very

11

large dog," forcing them to leave their lot. Weinstein and her husband then filed a lawsuit against the Leonards, and served process upon the Leonards at their home despite knowing that the Leonards were represented by counsel. They also contacted the Leonards directly the night before oral argument. The Leonards claimed that this constituted use of "legal training" to "intimidate and harass" them, forcing them to incur "substantial legal costs" to protect their rights. *Id.* at ¶ 30. The Vermont Supreme Court affirmed the trial court's dismissal of the claim. It concluded that "a single encounter" with Weinstein and her dog, "even if combined with filings of civil claims or threats to file such claims," did not rise to the level of substantial interference. *Id.* at ¶ 31. It also explained that a handful of "minor offenses" was insufficient to support an intrusion upon seclusion claim. *Id.* at ¶ 32.

The second relevant precedent is *Pion v. Bean*, 2003 VT 79. In that case, plaintiffs owned a lot that mostly surrounded another lot owned by defendants. Plaintiffs filed suit to quiet title, also alleging trespass and unlawful discharge of sewage. Id. at ¶ 3. Defendants counterclaimed for intrusion upon seclusion. They stated that plaintiffs regularly harassed them via highly offensive name-calling, threats to drive them off the property, informing them that plaintiffs would "fence [them] in like" dogs, harassing guests, regularly filing false complaints

12

resulting in frequent police visits, and unsubstantiated health code complaints. *Id.* at ¶ 32-38. After a bench trial, the trial court entered judgment for defendants on their intrusion upon seclusion claim, concluding that plaintiffs' actions amounted to persistent "hounding." *Id.* at ¶ 34.

The Vermont Supreme Court affirmed. It concluded that the "evidence amply shows that plaintiffs intentionally and substantially intruded on defendants' solitude and seclusion." *Id.* at ¶ 36. The court also stated that the law enforcement complaints could support the intrusion upon seclusion claim because they "were not motivated by genuine public safety or health concerns." *Id.* at ¶ 38 (citing *Beane v. McMullen*, 265 Md. 585 (1972) (repeated complaints to zoning officials did not constitute invasion of privacy where complaints resulted in finding of zoning violations because the complaints were "principally directed to the obtention of facts which likely would indicate a violation of the county ordinances. The complaints did not contain abrasive, scurrilous, or vile language.")).

*Weinstein* and *Pion* reveal that Teitlebaum has failed to state a claim for intrusion upon seclusion under Vermont law against either Nilsen or Potter.

13

### 1. Nilsen

The Amended Complaint states that Nilsen took several actions that amounted to an intrusion upon Teitlebaum's seclusion. It alleges that over the course of nearly two years she filed four law enforcement complaints, twice made hostile comments to Teitlebaum's guests, and recorded Teitlebaum's activities on his Property. Teitlebaum has not plausibly alleged that these actions amounted to "hounding" or that the resulting intrusion upon his solitude or seclusion was "substantial." *Pion*, 2003 VT 79; *Hodgdon*, 160 Vt. at 162.

Nilsen's complaints to law enforcement do not support a claim for intrusion upon seclusion. First, intrusion upon seclusion is "the act of offensively prying into the private domain of another," not publication of private information. *Spiegel v. McClintic*, No. 16-cv-9357, 2017 WL 4283727, at *8 n.10 (N.D. Ill. Sept. 27, 2017), aff'd, 916 F.3d 611 (7th Cir. 2019). In *Spiegel*, the Northern District of Illinois noted that police reports based upon incidents that occurred in public did not support a claim for intrusion upon seclusion. The Amended Complaint in this case does not specify the basis for many of the police reports allegedly filed by Nilsen and Potter, and does not state whether any of the observed conduct was private. Like in *Spiegel*, mere filing of law enforcement reports – without more – does not constitute a "substantial" intrusion

14

upon Teitlebaum's interest in solitude or seclusion because Teitlebaum has not alleged that the complained-of conduct was private.

The fact of police contact itself also does not support a claim for intrusion upon seclusion. First, the Amended Complaint does not state that any of Nilsen's complaints led to law enforcement action, or even a visit to the Property. This suggests that Nilsen's complaints to Town authorities did not cause actual interference with Teitlebaum's rights to privacy and seclusion. Further, a few complaints to public authorities does not amount to actionable conduct. The *Beane* decision – cited with approval by the Vermont Supreme Court in *Pion* – declined to find an intrusion upon seclusion where the defendants had motivated "more than 50 [law enforcement] investigations." 265 Md. at 601. That court found it significant that "the complaints in question were principally requests to the public authorities to investigate possible violations of the zoning and other county laws" and that the complaints were only made to "government officials and not to the press, to neighbors or social friends." *Id.* at 601-02. Similarly here, there is no allegation that Nilsen took any action with regard to the complaints other than submitting them to Town authorities.

Nilsen's other allegedly harassing actions also fail to support Teitlebaum's claim. The Amended Complaint asserts that

Nilsen recorded Teitlebaum's activities on the Property but does not state what Nilsen recorded, where she recorded it, or whether she publicized those recordings. Teitlebaum has not pleaded that Nilsen inappropriately recorded him or his guests, or that she recorded anything outside of the public view. Absent additional factual allegation, the Court cannot conclude that simply taking a video or audio recording supports a claim for intrusion upon Teitlebaum's interest in "solitude or seclusion." *Weinstein*, 2015 VT at ¶ 29; *Swerdlick v. Koch*, 721 A.2d 849, 857 (R.I. 1998) (finding no intrusion upon seclusion because "defendant took photographs and recorded events that were taking place outside of plaintiffs' house, all of which were in full view of their neighbors and of any other member of the public who may have been present").

Finally, Nilsen's alleged hostility towards Teitlebaum's guests does not support a claim for intrusion upon seclusion. In at least one incident, Teitlebaum's guests were walking on a public road when Nilsen allegedly made antagonistic comments and refused to leash her barking dogs. This conduct is not an intrusion into Teitlebaun's "interest in solitude or seclusion" because Teitlebaum does not have an interest in solitude or seclusion in his guests' walks on the public road. And like the "obscenities and bizarre comments" and dog-related confrontation in *Weinstein*, this too does not rise to the level of

16

"substantial" interference with Teitlebaum's privacy rights. *Id.*
at ¶ 31. Nilsen's allegedly off-color remarks — including
stating on another occasion that Teitlebaum's guests should "go
back where [they] came from," ECF No. 33 at 15 — are not so
invasive or offensive to support Teitlebaum's cause of action.
Accordingly, Teitlebaum's claim of intrusion upon seclusion
against Defendant Nilsen is dismissed.

### 2. Potter

Teitlebaum also alleges that Potter's actions amounted to
an intrusion upon seclusion. Potter's actions can be broken down
into three categories: (1) complaints, (2) recordings, and (3)
verbal incidents. The Court finds that Teitlebaum has failed to
state a plausible cause of action against Potter.

First, as detailed above, the act of filing complaints with
law enforcement does not necessarily constitute a substantial
intrusion upon an interest in privacy or seclusion. The Amended
Complaint does not state that the activities which gave rise to
Potter's the complaints were private.

It is true that repeated and unreasonable complaints can
constitute an intrusion upon seclusion. *Pion*, 2003 VT at ¶ 33.
But Potter filed 10 complaints to Wilmington authorities over
the course of nearly two years. *See* ECF No. 33 at 5 (explaining
that the facts in the complaint occurred over the course of
"less than two years"). Additionally, the false complaints in

17

*Pion* that supported the intrusion upon seclusion claim were accompanied by other overtly intrusive actions such as consistent verbal harassment, threats to drive the victims off their property, cutting down trees, and filling in a streambed behind their home. *Pion*, 2003 VT at ¶ 36. Teitlebaum has not alleged that Potter ever entered the Property, or that he regularly accosted the Teitlebaums.

It is also notable that only five of Potter's complaints led to actual contact with law enforcement, plus one additional encounter with the TZA. In *Pion*, the Vermont Supreme Court found it significant that, for a time, police visited the defendants' home "two to three times per week," with additional visits by health inspectors. *Pion*, 2003 VT at ¶ 33. This case involves substantially less contact with Town authorities; Teitlebaum alleges six interactions over the course of nearly two years. While potentially frustrating, this contact with law enforcement is not "substantial" enough to constitute an intrusion upon seclusion. Additionally, as noted above, reporting alleged zoning violations to law enforcement (without publicizing them elsewhere) is an appropriate and not-unduly-invasive course of action because it allows for state officials to mediate situations where tensions between neighbors might run high.

Teitlebaum's claim that Potter recorded his actions on his Property is not an intrusion upon seclusion for the same reasons

18

outlined above. The Amended Complaint does not state what Potter recorded, where he recorded it, or what he did with those recordings. The fact of recording – all that is alleged in the Amended Complaint – does not necessarily give rise to a claim for intrusion upon seclusion because recording does not intrude upon an "interest in solitude or seclusion" absent additional facts that the recorded material should be the subject of such an interest. *Swerdlick*, 721 A.2d at 857 ("Activities occurring in plain view of the public are not entitled to the protection of the privacy statute merely because they occur on private property in the vicinity of the actor's home.").

Finally, Teitlebaum alleges that on another occasion, Potter made statements that support an intrusion upon seclusion claim. But this isolated incident – during which Potter "demand[ed] that Mr. Teitlebaum agree to a self-imposed ordinance of no noise whatsoever after 4:00p.m," expressed lack of respect for Teitlebaum's unwillingness to accommodate the locals, and threatened to play loud music, ECF No. 33 at 13 – does not interfere with Teitlebaum's "interest in solitude or seclusion, either as to his person or as to his private affairs or concerns." *Weinstein*, 2015 VT at ¶ 29. Teitlebaum does not allege that Potter acted on any of these comments, or that his allegedly threatening actions extended beyond this single conversation. *Cf. Pion*, 2003 VT at ¶ 32, 42 (finding invasion of

privacy where neighbor "verbally harassed" victims "on a regular basis, using offensive names and allegations of adultery). While some of Potter's statements might invade Teitlebaum's interest in solitude or seclusion if made regularly or accompanied by physical actions, a single antagonistic conversation is insufficient to state a claim.

### D. Nuisance

Under Vermont law, a private nuisance is "a substantial and unreasonable interference with a person's interest in the use and enjoyment of land." *Jones v. Hart*, 2021 VT 61, ¶ 26 (citing *Coty v. Ramsey Assocs., Inc.*, 149 Vt. 451, 457 (1988). An interference is substantial if it exceeds "the customary interferences a land user suffers in an organized society." *Id.* The Vermont Supreme Court has explained that "a sustained and intentional campaign to annoy a neighbor by interfering with the use and enjoyment of the neighbor's property can amount to a private nuisance." *Id.* at ¶ 29. It noted that nuisance claims can be supported by deprivations of "the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land," and accordingly concluded that private nuisance is "not limited to pollution-based or physical interferences in the use and enjoyment of land." *Id.* at ¶ 32 (citing Restatement (Second) of Torts: Nuisance § 821D cmt. b).

Determining whether an action rises to the level of a private nuisance or whether it is simply a "petty annoyance[] of everyday life in a civilized community" requires weighing the gravity of the harm against the utility of the action. *Id.* at ¶ 34 (citing *Rattigan v. Wile*, 445 Mass. 850, 856 (2006)). In lawsuits involving disputes between neighbors, "harassment and annoyance" – which "generally causes relatively little harm, as compared to other categories of interferences" – can rise to the level of a nuisance when "the harassment and annoyance is repeated over a prolonged period and the activity causing the interference has no utility." *Id.* at ¶ 37.

Teitlebaum has not stated a private nuisance claim against either Nilsen or Potter.

**1. Nilsen**

As noted above, the Vermont Supreme Court has instructed that when evaluating a private nuisance claim, courts should weigh the gravity of the complained-of conduct against its social utility. *Jones*, 2021 VT 61, ¶ 34. First, Nilsen's actions did not cause grave harm to Teitlebaum. Cases finding private nuisance arising from harassment of neighbors have uniformly involved serious and repeated allegations of harassment. *See Jones*, 2021 VT 61, ¶ 26 (defendants interfered with snow plowing, trespassed, parked in a manner that restricted visibility upon exit, took pictures of plaintiff, and drove

unsafely) (citing *Griffin v. Northridge*, 67 Cal. App. 2d 69 (1944) (trampled flowerbeds, placed garbage under window, tied tin cans together along fence, sprayed paint, repeatedly verbally harassed plaintiff); *Burnett v. Rushton*, 52 So. 2d 645, 646 (Fla. 1951) (mowed lawn near plaintiff's window early in the morning, blared radio at night, incited dog to bark, made obscene gestures to plaintiff's family); *Wooten v. Williams*, 342 Ga. App. 511, 512 (2017) (defendants entered property with a gun and asked to "resolve their differences," pulled vehicle onto plaintiffs' property and sat menacingly)). Teitlebaum's allegations against Nilsen do not rise to that level. Nilsen made four complaints, some off-color comments, and recorded unspecified activities – conduct significantly less harassing than the actions at issue in the aforementioned cases.

Second, while the Court is mindful of its obligation to draw all plausible inferences in favor of the plaintiff, *Chambers*, 282 F.3d at 152, Nilsen's actions held some social value. Teitlebaum's neighbors undisputedly disliked some of Teitlebaum's conduct, recorded the activities that caused their discontent, and submitted corresponding law enforcement complaints. *See* ECF No. 38 at 5.[4] Filing police reports and

---

[4] The Amended Complaint states that none of the neighbors' complaints against Teitlebaum "resulted in a substantiated criminal charge or a substantiated violation of the Town of

zoning complaints is an effective way of ensuring compliance with local ordinances – and is undoubtedly preferable to engaging in self-help remedies. By involving local law enforcement authorities, Nilsen expressed her dissatisfaction with Teitlebaum's actions in a peaceful and non-confrontational way. Teitlebaum has, accordingly, not stated a claim for nuisance against Nilsen.

### 2. Potter

Teitlebaum has also failed to allege sufficiently pervasive and offensive conduct by Potter to state a claim for private nuisance. As noted above, other cases finding nuisance from neighbor-harassment involved long-term animosity and, in many cases, physical intrusion onto the plaintiff's property. Potter made ten complaints in two years, which is not patently outrageous. And while several of the complaints refer to Teitlebaum's religion, those references are not overtly hateful or disrespectful (which would increase the gravity of the harm from the complaints).[5] Additionally, while Potter's verbal

---

Wilmington's Ordinances," but the absence of a formal violation does not necessarily mean that the complaints were totally baseless. ECF No. 33 at 12. It is the responsibility of law enforcement entities to investigate alleged violations, which is what happened here.

[5] The Court is mindful of its obligation to take all facts in the complaint as true and draw all plausible inferences in favor of plaintiffs, but the Amended Complaint simply points out that Potter's law enforcement complaints used Teitlebaum's religion

representations of disrespect and threat to play loud music seem
unfriendly, they are not nearly as serious as the allegations in
other neighbor-on-neighbor nuisance cases. *See, e.g.*, *Wooten*,
342 Ga. App. at 512 (finding nuisance based in part on defendant
arriving at plaintiff's house with a gun and challenging him to
a duel). Accordingly, the harm resulting from Potter's actions
is minimal.

Again, the Vermont Supreme Court has instructed that
evaluation of whether an action constitutes a "substantial and
unreasonable interference with a person's interest in the use
and enjoyment of land" requires consideration of the gravity of
the harm and the utility of the challenged action. *Jones,* 2021
VT at ¶ 26, 34. Again, even drawing all plausible inferences in
favor of Teitlebaum, Potter's conduct (like Nilsen's) carried
some social value through involving state law enforcement in the
dispute-resolution process, and posed little risk of harm aside
from annoyance to Teitlebaum.

### III. Conclusion

For the foregoing reasons, the Court concludes that Plaintiff
Teitlebaum has failed to state a claim for intrusion upon
seclusion or nuisance against Defendants Nilsen and Potter.

---

as a descriptor. This does not require the inference that the
complaints were motivated by animosity or made purely to harass
the Teitlebaums.

Accordingly, Defendants' motions to dismiss (ECF Nos. 38, 46) are **granted** and Counts VII and VIII are dismissed as to Defendants Nilsen and Potter.

DATED at Burlington, in the District of Vermont, this 26th day of February, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge