UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

YISROEL TEITLEBAUM,                    :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :   Case No. 2:23-cv-88
                                       :
RYAN P. O'NEIL, JENNIFER NILSEN,       :
ERIC POTTER, DAVID BOLIVER,            :
TOWN OF WILMINGTON SELECTBOARD         :
and TOWN OF WILMINGTON,                :
                                       :
        Defendants.                    :

## OPINION AND ORDER

Plaintiff Yisroel Teitlebaum purchased a property in Wilmington, Vermont in June of 2021 ("the Property"). In May of 2023 he filed this lawsuit against his neighbors and several town officials, alleging a pattern of intrusive and anti-Semitic acts. Defendant David Boliver has filed a motion to dismiss. Taking all of the facts in the Complaint as true, the Court concludes that Teitlebaum has plausibly stated a claim for nuisance and intentional infliction of emotional distress, but not for intrusion upon seclusion. Accordingly, Boliver's motion to dismiss (ECF No. 58) is **granted** in part and **denied** in part.

### I.   Factual and Procedural Background

The facts of this case are outlined in the Court's Order on Defendants Potter and Nilsen's motions to dismiss. ECF No. 57. The Court assumes the parties' familiarity with those generally

applicable facts. The instant motion pertains to Defendant Boliver.

Teitlebaum alleges that Boliver filed a police complaint about Teitlebaum and other "members of the Jewish community" bathing naked in the nearby river on June 20, 2021, just eleven days after Teitlebaum purchased the Property. ECF No. 33 at 6. This complaint led to a police visit to the Property, with no resulting disciplinary action. *Id.* at 7.

Boliver then allegedly filed a complaint with the Town of Wilmington's Zoning Administrator on May 15, 2022. That complaint reads as follows:

> [T]hose people are at it again. They have a group of kids there & the noise has been non stop yesterday, last night & this morning. It looked like they were using the conference building last night too. Is anything going to be done about this? It seems like it's all words & no action. Thanks for listening.

ECF No. 33 at 10. The Town "did not bring an enforcement action" against Teitlebaum as a result of this complaint. *Id.*

Roughly one month later, on June 12, 2022, Boliver (along with Defendant Potter) filed a police complaint "about Mr. Teitlebaum using his Property to perform a religious ritual." ECF No. 12 at 33. The complaint allegedly referenced Teitlebaum's religious beliefs, "referring to the individuals at Mr. Teitlebaum's home as 'the Hasidic Jews.'" *Id.* The police again contacted Teitlebaum but did not impose any sanction.

2

On August 15, 2022, Boliver allegedly mounted a pig's head on a stake near the property line between his and Teitlebaum's properties.[1] The Amended Complaint includes a picture of this mounted pig's head. It states that the pig's head was placed in a location that was "visible to Mr. Teitlebaum and others on Mr. Teitlebaum's property." ECF No. 33 at 14. Teitlebaum states that this action "was an anti-Semitic gesture," and served as a "specific communication and/or threat regarding Mr. Teitlebaum's religious beliefs." *Id.* He also states that "as someone who practices Judaism, [he] understood the display to be an anti-Semitic threat directed at him and his family." *Id.*

Finally, on September 3, 2022, Boliver and Potter allegedly filed a noise complaint related to an outdoor religious ritual performed by Teitlebaum and 10-12 guests. ECF No. 33 at 16. Teitlebaum states that this complaint led to a visit from the Wilimington police, and an anti-Semitic reaction by Wilimington Police Officer Ryan O'Neil.

The Court previously dismissed Teitlebaum's nuisance and intrusion upon seclusion claims against Potter and Nilsen. ECF

---

[1] Boliver asserts in his reply brief that this was actually "a mask of a pig head which might be worn for Halloween." ECF No. 63 at 2. For purposes of the motion to dismiss – and especially because Teitlebaum has not had an opportunity to respond to this claim – the Court will assume that the head was from a real pig.

No. 57. Boliver has filed a motion to dismiss. ECF No. 58. That motion is ripe.

## II. Discussion

### A. Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss filed under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, a court need not accept as true "[l]egal conclusions, deductions or opinions couched as factual allegations." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

4

B. Intrusion Upon Seclusion

To bring a claim for the tort of intrusion upon seclusion, a plaintiff must show an "intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable person." *Weinstein v. Leonard*, 2015 VT 136, ¶ 29 (cleaned up) (quoting *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 162 (1992)). The Vermont Supreme Court has explained that the intrusion "must be substantial." *Hodgdon*, 160 Vt. at 162. "A single [irritating and frightening] encounter, . . . even if combined with filings of civil claims or threats to file such claims," does not rise to the level of substantial interference. *Weinstein*, 2015 VT at ¶ 31. Neither is "a handful of "minor offenses." *Id.* at ¶ 32. In extreme cases, repeated law enforcement complaints can support an intrusion upon seclusion claim when they are "not motivated by genuine public safety or health concerns." *Pion v. Bean*, 2003 VT 79 ¶ 38 (citing *Beane v. McMullen*, 291 A.2d 37 (Md. 1972)).

As noted in the Court's prior order, Teitlebaum has not alleged that Nilsen, Potter, and Boliver acted in concert. ECF No. 57 at 10-11. The Amended Complaint therefore attributes just four complaints – three to the police and one to the Town Zoning Administrator – to Boliver over the course of nearly two years. These actions do not amount to "hounding," and did not cause a

"substantial" intrusion upon Teitlebaum's seclusion. *Pion*, 2003 VT 79; *Hodgdon*, 160 Vt. at 162.

Additionally, as with the complaints made by Potter and Nilsen, Teitlebaum does not allege that any of Boliver's complaints were based upon private conduct. The four complaints were allegedly based upon nude bathing under a bridge (twice), ECF No. 33 at 6, 12, "non stop" noise from a "group of kids," ECF No. 33 at 10, and noise from an outdoor religious ritual involving "spoken and sung prayer." ECF No. 33 at 16. These all involved conduct perceptible from beyond the Property. *Cf. Spiegel v. McClintic*, No. 16-cv-9357, 2017 WL 4283727, at *8 n.10 (N.D. Ill. Sept. 27, 2017), *aff'd*, 916 F.3d 611 (7th Cir. 2019) (police reports based upon incidents that occurred in public did not support a claim for intrusion upon seclusion). The Amended Complaint does not support Teitlebaum's intrusion upon seclusion action because it does not allege that Boliver's actions interfered with Teitlebaum's "interest in solitude or seclusion." *Weinstein*, 2015 VT at ¶ 29; *Swerdlick v. Koch*, 721 A.2d 849, 857 (R.I. 1998) (finding no intrusion upon seclusion because "defendant took photographs and recorded events that were taking place outside of plaintiffs' house, all of which were in full view of their neighbors and of any other member of the public who may have been present").

The police contact allegedly resulting from Boliver's complaints does not support a claim for intrusion upon seclusion either. Boliver made just four complaints in three years, and police contacted Teitlebaum on three of those occasions. Three interactions with law enforcement is not "substantial" enough to support Teitlebaum's cause of action. *See Beane*, 291 A.2d at 45 (finding no intrusion upon seclusion after defendants allegedly motivated 50 law enforcement investigations). And like the complaints made by Potter, Nilsen, and the defendants in *Beane*, Boliver's complaints requested official investigation of alleged municipal law violations. ECF No. 57 at 15 (citing *Beane*, 291 A.2d at 46). Boliver did not publicize Teitlebaum's private information beyond Town law enforcement officials, mitigating the intrusiveness of his alleged actions. *Pion*, 2003 VT at ¶ 36 (false police complaints that supported the intrusion upon seclusion claim were accompanied by other overtly intrusive actions).

Boliver's alleged placement of a pig's head on a stake near the property line also does not amount to an intrusion upon seclusion for two reasons. First, as the Vermont Supreme Court noted in *Weinstein*, "a single encounter" – even if "irritating and frightening" – does not rise to the level of "substantial interference." *Weinstein*, 2015 VT at ¶ 31; *see also* Restatement (Second) of Torts § 625B cmt. d. (conduct must be "repeated with

7

such persistence and frequency as to amount to a course of hounding the plaintiff" to qualify as an intrusion upon seclusion). Cases that have found intrusions upon seclusion have involved repeated patterns of invasive conduct, unlike this case. *See, e.g.*, *Pion*, 2003 VT at ¶ 32-38 (finding intrusion upon seclusion when victims were regularly harassed via offensive name-calling, threats, statements that they would be "fence[d] in" like dogs, like" dogs, harassment of guests, false police complaints resulting in frequent visits, and unsubstantiated health code complaints); *Dasler v. Knapp*, No. 2:21-CV-135, 2021 WL 4134398, at *6 (D. Vt. Sept. 10, 2021) (defendant intercepted plaintiff's emails, physically followed plaintiff on several occasions, entered plaintiff's car, hired others to surveil plaintiff, and placed a tracking device on plaintiff's child). While Boliver's pig's head placement may have diminished Teitlebaum's feeling of "seclusion" on his property, the single incident does not qualify as a substantial interference with that interest.

Second, while an action does not need to occur on a plaintiff's property to support an intrusion upon seclusion claim, the location of the action is relevant to the determination of whether it infringed a plaintiff's interest in solitude or seclusion. *Weinstein*, 2015 VT at ¶ 29. Boliver's head-stake placement does not support Teitlebaum's intrusion

upon seclusion claim because it did not substantially intrude upon Teitlebaum's privacy. The stake was on the property line, and did not extend into an area where Teitlebaum had a robust expectation of seclusion. Further, Teitlebaum does not allege that Boliver actually perceived any of his private affairs. *Cf. Finlay v. Finlay*, 18 Kan. App. 2d 479, 485-86 (1993) (finding no intrusion upon seclusion for neighbor's operation of cattle-feeding operation with offensive smell because "Plaintiffs' private affairs are not exposed to defendant's physical presence or the presence of defendant's senses"). Accordingly, Teitlebaum's intrusion upon seclusion claim against Defendant Boliver is dismissed.

### C. Nuisance

Under Vermont law, a private nuisance is "a substantial and unreasonable interference with a person's interest in the use and enjoyment of land." *Jones v. Hart*, 2021 VT 61, ¶ 26 (citing *Coty v. Ramsey Assocs., Inc.*, 149 Vt. 451, 457 (1988)). An interference is substantial if it exceeds "the customary interferences a land user suffers in an organized society." *Id.* The Vermont Supreme Court has explained that "a sustained and intentional campaign to annoy a neighbor by interfering with the use and enjoyment of the neighbor's property can amount to a private nuisance." *Id.* at ¶ 29. Nuisance claims can be supported by deprivations of "the pleasure, comfort and enjoyment that a

9

person normally derives from the occupancy of land," and are "not limited to pollution-based or physical interferences in the use and enjoyment of land." *Id.* at ¶ 32 (citing Restatement (Second) of Torts: Nuisance § 821D cmt. b).

Determining whether an action rises to the level of a private nuisance or whether it is simply a "petty annoyance[] of everyday life in a civilized community" requires weighing the gravity of the harm against the utility of the action. *Id.* at ¶ 34 (citing *Rattigan v. Wile*, 445 Mass. 850, 856 (2006)). In lawsuits involving disputes between neighbors, "harassment and annoyance" – which "generally causes relatively little harm, as compared to other categories of interferences" – can rise to the level of a nuisance when "the harassment and annoyance is repeated over a prolonged period and the activity causing the interference has no utility." *Id.* at ¶ 37.

Teitlebaum has stated a private nuisance claim against Boliver. The Court's prior Order detailed several cases finding private nuisance resulting from harassment of neighbors. *See* ECF No. 57 at 21-22. Each involved serious harassment, and many involved threats. *See, e.g.*, *Wooten v. Williams*, 342 Ga. App. 511, 512 (2017) (defendants entered property with a gun and asked plaintiffs to "resolve their differences").

The allegations against Boliver are distinct from those involving Potter and Nilsen in both the gravity of the harm and

10

the utility of the action. The Court concluded that Potter and Nilsen's alleged conduct – including recording Teitlebaum's activities and later law enforcement complaints[2] – was neither "patently outrageous" nor "overtly hateful or disrespectful." ECF No. 57 at 23. The harm from their behavior was minimal. The Court also concluded that those actions "held some social value" because while Potter and Nilsen undoubtedly disliked Teitlebaum's conduct, they responded by "record[ing] the activities that caused their discontent and submit[ing] corresponding law enforcement complaints." ECF No. 57 at 22 (cleaned up). This is preferable to self-help remedies which may escalate preexisting tensions.

Taken as true, Boliver's pig's head placement is cut from a different cloth than the actions taken by Potter and Nilsen. Teitlebaum perceived this as "a specific communication" about his religious beliefs – specifically, an "anti-Semitic threat." ECF No. 33 at 14-15. Drawing all inferences in favor of Teitlebaum, *Chambers*, 282 F.3d at 152, the gravity of the harm

---

[2] The only additional allegations levied against Potter and Nilsen involved hostile comments, including Nilsen telling Teitlebaum's guests to "go back where [they] came from," ECF No. 33 at 15, and Potter threatening to play loud and profane music to annoy people on the Property. ECF No. 33 at 12. While these comments hold little utility, they also "cause[d] relatively little harm" and do not amount to much more than a "petty annoyance[] of everyday life in a civilized community." *Jones*, 2021 VT at ¶ 37; 34.

from this event is high. It evinces serious antagonism towards
Teitlebaum, and willingness to take physical action to convey
that antagonism. This hostility – and Teitlebaum's resulting
offense – plausibly exceeds "the customary interferences a land
user suffers in an organized society." *Jones*, 2021 VT at ¶ 26.
Additionally, the Court struggles to see (and Boliver's counsel
has failed to present) any argument as to why this behavior
could be considered socially useful. *Jones*, 2021 VT at ¶ 34.

Boliver engaged in behavior revealing a capacity to resolve
disputes in a pro-social and evenhanded way: submitting reports
to law enforcement officials. He departed from that blueprint
when he placed a pig's head on a stake along Teitlebaum's
property line. Accordingly, Boliver's motion to dismiss is
denied as to Teitlebaum's nuisance claim.

### D. Intentional Infliction of Emotional Distress

Teitlebaum also asserts that Boliver intentionally caused
him emotional distress when he "mounted a pig's head on a stake
at a location where it was visible to Mr. Teitlebaum" and his
guests. ECF No. 33 at 32. To state a claim for intentional
infliction of emotional distress ("IIED"), a plaintiff must show
that defendants' conduct was "so outrageous in character and so
extreme in degree as to go beyond all possible bounds of decent
and tolerable conduct in a civilized community and be regarded
as atrocious and utterly intolerable." *Fromson v. State*, 2004 VT

29, ¶ 14 (quoting *Dulude v. Fletcher Allen Health Care, Inc.*, 174 Vt. 74, 83 (2002)). This Court has broken the tort down into three elements: (1) outrageous conduct; (2) done intentionally or with "reckless disregard of the probability of causing emotional distress;" and (3) actually or proximately causing extreme emotional distress. *Kwon v. Univ. of Vermont & State Agric. Coll.*, 912 F. Supp. 2d 135, 146 (D. Vt. 2012) (quoting *Fromson*, 2004 VT ¶ 14).

Boliver argues that his conduct was not "extreme and outrageous." ECF No. 58 at 2. For purposes of the motion to dismiss, the Court disagrees. Teitlebaum has stated that Boliver placed a pig's head on a stake on their shared property line with no intent other than to intimidate. ECF No. 33 at 15. Deliberate intimidation is extreme and outrageous, especially given that (according to the Amended Complaint) there was no alternative justification for the action. Questions of motive aside, a jury could find that placing a pig's head on a stake next to a neighbor's property transcends the ordinary bounds of decent and tolerable conduct in a civilized community. *Cate v. City of Burlington*, 2013 VT 64, ¶ 28 (noting that IIED is evaluated using an "objective standard based on the [defendant's] actions and words, not on what the [plaintiff] personally believed motivated the [defendant's] conduct."); *Jobin v. McQuillen*, 158 Vt. 322, 327 (1992) ("It is for the

13

court to determine as a threshold question whether a jury could reasonably find that the conduct at issue meets the test.").

Boliver next argues that Teitlebaum has failed to allege either that Boliver's conduct caused severe emotional distress or that Teitlebaum experienced such severe distress. ECF No. 58 at 2. While the Amended Complaint does not use the term "severe distress," it does allege such distress. *See, e.g.*, ECF No. 33 at 15 ("Mr. Teitlebaum saw the pig's head mounted on a stake and, as someone who practices Judaism, understood the display to be an anti-Semitic threat directed at him and his family."); ECF No. 33 at 32 (the pig's head on a stake "caused Mr. Teitlebaum emotional distress."). The Amended Complaint also attributes that distress to Boliver's actions. As explained above, Teitlebaum asserts that he interpreted Boliver's action as a specific threat, which caused his distress. This allegation is plausible enough to proceed beyond a motion to dismiss.

### III. Conclusion

For the foregoing reasons, the Court concludes that Teitlebaum has stated a claim for nuisance and IIED against Defendant Boliver but has not stated a claim for intrusion upon seclusion. Accordingly, Boliver's motion to dismiss (ECF No. 58) is **granted** as to Count VII and otherwise **denied.**

14

DATED at Burlington, in the District of Vermont, this 12th day of April, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge